649 So.2d 586 (1994)
STATE of Louisiana, Plaintiff-Appellee,
v.
Michael BUCHANAN, Sr., Defendant-Appellant.
No. CR 94-488.
Court of Appeal of Louisiana, Third Circuit.
November 2, 1994.
Writ Denied March 24, 1995.
*587 J. Reed Walters, Dist. Atty., for State.
Mark L. Talley, Jena, for Michael W. Buchanan.
Before LABORDE, YELVERTON and DECUIR, JJ.
YELVERTON, Judge.
Defendant, Michael Buchanan, was found guilty of second degree murder, a violation of La.R.S. 14:30.1. He was sentenced to life imprisonment without benefit of probation, parole or suspension of sentence. Defendant appeals his conviction and sentence, alleging five assignments of error.

FACTS:
On February 5, 1992, defendant got a phone call at work telling him that his wife, LeWanda Crain Buchanan, had left their home to meet a former boyfriend. Defendant left work and went to his house. There he armed himself with a single-shot shotgun and an axe handle. Then he and a friend, Alfred Cassells, Jr., went looking for defendant's wife who was in a car rented by the defendant. They located the rental car. Inside it was defendant's wife with two passengers. Rhonda Smith was in the back and Andy Proffer, defendant's brother-in-law, was in the front passenger seat. Defendant ordered everybody out of the car. Defendant's wife and Rhonda Smith left the car and entered the apartment of Darrell Proffer, defendant's other brother-in-law. Andy Proffer stayed in the car. When Andy Proffer refused to exit the vehicle, the defendant put the shotgun to Proffer's neck. The shotgun discharged, killing Andy Proffer instantly.

ERRORS PATENT:
Credit for time served is mandatory. La.Code Crim.P. art. 880. It was not given. It is an error patent. State v. Pittman, 636 So.2d 299 (La.App. 1st Cir.1994). We amend the sentence to reflect that the defendant is to be given credit for time served prior to the execution of his sentence.
Also, the defendant was not informed of the prescriptive time for post conviction relief, as required by La.Code Crim.P. art. 930.8. We can correct this oversight by requiring the district court to notify the defendant of the provisions of the article, and we will do so at the conclusion of this opinion.

ASSIGNMENT OF ERROR NO. 1:
By this assignment of error, defendant contends the trial court erred in refusing to grant him a continuance six days before trial.
*588 The trial court explained the denial of the continuance in these words:
All right, show that this matter began by an incident that occurred on the 5th day of February of 1992 wherein one Andy Proffer was killed. As a result of that incident a grand jury indictment was returned on the 10th day of March of 1992 indicting one Michael Buchanan for second degree murder in violation of Louisiana Revised Statutes 14:30.1. Even prior to the indictment of the 10th of March of 1992, the defendant, through his attorney at that time, requested a[n] expert to perform tests on the shotgun allegedly used in the commission of this crime. This court granted such an order on February 13th of 1992. Not only did it grant the order authorizing the availability of the shotgun to the defendant for testing purposes but it ordered because of the indigent status of the defendant at that time that the State of Louisiana pay for the test. The defendant chose his expert, one Ken Eversull, and the shotgun was made available to Mr. Eversull. Since February 13, 1992 the defendant has had access to that expert and has had adequate time in which to seek any testing the defendant chose to seek. The defendant has not sought the testing that it now seeks today during that period of time and this is at the 11th hour prior to trial. The court understands that the last test results did not even become available until the 16th of November, but as I understand it this was a joint test which late in the situation was requested or approved by both sides to see if they could get a better understanding of exactly what did happen on the day of the incident. The court also notes that this matter was scheduled for jury trial commencing August 31, 1992 and that the defendant requested and was granted a continuance at that time for the very purpose of allowing the expert to review the gun and to make the test necessary for his defense.
The trial court did not err in denying defendant's motion for continuance. The State has already provided funding for one expert witness selected by the defendant himself. The witness had ample time to conduct tests. Defendant received an unfavorable report from Mr. Eversull. Defendant could only speculate as to what another expert might find. The granting or refusal of a motion for continuance rests within the sound discretion of the trial judge. Absent an abuse of discretion, his decision should not be disturbed. State v. Bourque, 622 So.2d 198 (La.1993). This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 2:
Alfred Cassells, Jr., who was with defendant when they drove to the scene of the crime, testified for the State. He identified the gun. When he was asked on cross-examination whether the gun appeared to be in working order, an objection was sustained. This ruling is Assignment of Error No. 2.
Elsewhere in the testimony of this witness he described the gun as an "old shotgun ... all broke ... broken hammer on it ... duct tape and all that." However, Cassells also testified that while the defendant and the gun were in his car, the gun was not cocked as he "... ain't riding around with a cocked gun in my car."
Defendant did not object to the ruling excluding the testimony.
La.Code Evid. art. 103 A states that error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected. § A(2) of the same article provides that error may not be predicated upon a ruling excluding evidence unless the substance of the evidence was made known to the court by counsel. In the present case, when the objection was made the defendant did not make known the substance of the excluded evidence for the purpose of consideration by the trial court and review on appeal. State v. Lobato, 603 So.2d 739 (La.1992). This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 3:
Rhonda Smith testified for the State. On cross-examination she testified that she had a relationship with the deceased, Andy Proffer, and that they were friends. When asked if she had spent the night with him the night before this incident, the State objected *589 and the trial court excluded the evidence. The defendant did not object to the trial court's ruling, make known the substance of the excluded evidence or proffer it. The defendant argues on appeal that under La. Code Evid. art. 607, evidence of an intimate relationship is admissible to show bias on the part of any witness. The State argues that the defendant, not having complied with La. Code Evid. art. 103, should not be allowed to predicate alleged reversible error on the evidentiary ruling.
We agree with the State.
Furthermore, a trial judge is vested with wide discretion in determining the relevancy of evidence. Absent an abuse of discretion, his decision should not be disturbed on appeal. State v. Chaney, 423 So.2d 1092 (La.1982); State v. Freeman, 447 So.2d 1145 (La.App. 3d Cir.), writ denied 449 So.2d 1356 (La.1984). Also, there was sufficient evidence to convict defendant without the testimony of Rhonda Smith. This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 4:
Photographs of the scene show that the victim died with a cigarette in his hand and a drink between his legs, still sitting on the passenger side of the front seat where he was when the car drove up. According to the forensic pathologist, Dr. George McCormick, the victim was legally intoxicated with ethanol.
The defendant lodged Assignment of Error No. 4 to the trial court's refusing to allow his witness, Marilyn Price, to testify whether the victim, who was her brother, appeared to be intoxicated the day he was killed. The State's objection did not occur until after the following colloquy had been heard by the jury:
Q Could you tell whether or not your brother had been drinking?
A He had been drinking a lot.
Q When you say a lot how did you observe that?
A Well, I know my brother and I know how he drinks and I know he....
When the State objected the trial court would not let her continue testifying as to intoxication because she was not an expert.
Defendant claims that this was error and cites La.Code Evid. art. 701, which permitted Mrs. Price to give testimony in the form of an opinion as to whether, based on her perceptions during the day in question, her brother, the deceased, appeared to be intoxicated. We agree that this was error. In State v. Neal, 321 So.2d 497 (La.1975) the Louisiana Supreme Court held that intoxication, with the attendant behavioral manifestations, is an observable condition about which a witness may testify.
However, the deceased's intoxication, under the facts of this case, had nothing to do with the prosecution for second-degree murder or manslaughter. The defendant did not present a theory of self-defense. Also, there was ample evidence and no dispute that the deceased was intoxicated, and his sister had already testified substantially to that effect. Further testimony by her on the subject would have been unnecessarily cumulative. This assignment has no merit.

ASSIGNMENT OF ERROR NO. 5:
By this final assignment of error, defendant contends that the verdict of guilty of second degree murder was not supported by the evidence and law. The defendant contends that the State did not prove beyond a reasonable doubt that the victim was not shot accidentally, and that the State did not prove beyond a reasonable doubt that the defendant specifically intended to kill or inflict great bodily harm upon the victim.
When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 rehearing denied, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559, at 563 (La.1983); State v. Duncan, 420 So.2d 1105 (La.1982); State v. Moody, 393 So.2d 1212 (La.1981). It is the role of *590 the fact finder to weigh the respective credibility of the witnesses, and therefore the appellate court should not second guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. See State ex rel. Graffagnino, supra, citing State v. Richardson, 425 So.2d 1228 (La.1983).
The State had to prove beyond a reasonable doubt that the killing was done with the specific intent to kill or inflict great bodily harm. La.R.S. 14:30.1. State v. Montgomery, 575 So.2d 471 (La.App. 3d Cir.1991).
Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La.R.S. 14:10. Specific criminal intent may be inferred from the circumstances present in the case and the actions of the defendant. State v. Jack, 596 So.2d 323 (La.App. 3d Cir.), writ denied 600 So.2d 611 (La.1992). Discharging a firearm aimed directly at a victim is indicative of intent to kill or inflict great bodily harm. State v. Maxey, 527 So.2d 551 (La. App. 3d Cir.1988), writ denied 541 So.2d 868 (La.1989). Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. Due process requires no greater burden. State v. Rosiere, 488 So.2d 965 (La. 1986).
From the facts adduced at trial a rational juror could have found that the defendant possessed the specific intent to kill or inflict great bodily harm upon the victim.
Defendant got out of the car with an axe handle in one hand and a shotgun in the other. Alfred Cassells stated that the defendant told him that he was retrieving his rental car. Mr. Cassells thought the defendant brought the gun and axe handle along "in case Pedro [Bradford] or some of them might have been around it...." (Pedro Bradford was the former boyfriend that defendant had been told his wife was going to meet.)
Rhonda Smith testified that she was in the back seat of the car driven by LeWanda Buchanan, the victim's sister. Andy Proffer, the victim, was seated in the front passenger seat. The defendant walked up to the vehicle with "a gun and a club." The defendant shouted for them to get out of the car. Rhonda Smith testified that she and LeWanda Buchanan exited the vehicle and ran to a nearby apartment occupied by Loretta Mitchell and Darrell Proffer. As she was running towards the apartment, Ms. Smith heard a gunshot. When she turned around, Ms. Smith saw the victim laying back in his seat and the defendant exiting the driver's side of the vehicle. Ms. Smith testified that she locked the door of the apartment and called the police because the defendant was beating on the door of the apartment.
Cheryl Ann Allen testified at trial that she lived above the apartment in which Ms. Smith and Ms. Buchanan sought refuge. Ms. Allen's oldest daughter came home crying and told her that Mike was outside with a gun and had told her to go inside. When Ms. Allen went downstairs and asked the defendant why he sent her children home, the defendant stated that "he sent them[sic] the children back in so they didn't need to see what he was fixing to do." Ms. Allen then testified that the defendant stated that he "shot the son-of-a-bitch". When she asked why, the defendant stated that the victim, Andy Proffer, "wouldn't get out of the car."
Defendant contends the shooting was accidental. Defendant alleges in brief that he took the gun with him out of fear of a possible confrontation with Pedro Bradford, the man with whom his wife was reportedly having an affair. When Andy Proffer would not get out of the rental car, the defendant claims he "began poking him with the gun when it accidentally discharged."
Ken Eversull, the expert gunsmith who testified at trial, stated that he did not think the gun would discharge if held in a horizontal position and jabbed into the neck of a human being. Mr. Eversull also testified that the gun was difficult to cock and in his opinion, it could not be cocked by accident.
Dr. George McCormick, Coroner of Caddo Parish, testified that he noticed no bruises, cuts or abrasions on the left side of the *591 victim's cheek and neck. Dr. McCormick also found no cuts or bruises on the inside of the left cheek. Dr. McCormick felt that if the victim had been jabbed, struck or poked with a hard object such as a gun muzzle, some bruising, cuts or abrasions would probably have appeared on the inside of the left cheek.
In the present case, the defendant admitted the victim died as a result of a gunshot discharged from a gun held in his hands. As stated previously, when an individual purposely discharges a firearm pointed directly at a victim from a short distance, specific intent to kill or inflict great bodily harm may easily be inferred. State v. Noble, 425 So.2d 734 (La.1983). Therefore, the only issue left to resolve would be whether the defendant intentionally shot the victim.
The jury, after hearing the testimony of the witnesses, chose to reject the theory of accident and lack of specific intent as evidenced by their verdict of guilty. A rational juror could have inferred that defendant possessed the specific intent to kill or inflict great bodily harm upon the victim. Under the circumstances, it could reasonably be inferred from the fact that the defendant shot the victim in the neck at close range, that the defendant actively desired Andy Proffer's death to follow his act. See State v. Boyer, 406 So.2d 143 (La.1981).
For the foregoing reasons, this assignment of error lacks merit.

JUDGMENT:
The conviction and the sentence are affirmed. The district court is ordered to amend the commitment and minute entry of the sentence to reflect that the defendant is given credit for time served. The district court is also directed to inform the defendant of the provisions of La.Code Crim.P. art. 930.8 by sending appropriate written notice to the defendant within 10 days of the rendition of this opinion and to file written proof that the defendant received the notice in the record of the proceedings.
AFFIRMED WITH INSTRUCTIONS.