960 So.2d 1132 (2007)
STATE of Louisiana
v.
Luther D. McFARLAND.
No. 06-KA-970.
Court of Appeal of Louisiana, Fifth Circuit.
May 29, 2007.
*1134 Paul D. Connick, Jr., District Attorney, Twenty-Fourth Judicial District, Parish of Jefferson, Terry M. Boudreaux, Anne Wallis, Donald Rowan, Assistant District Attorneys, Gretna, Louisiana, for Plaintiff/Appellee.
Jane L. Beebe, Louisiana Appellate Project, New Orleans, Louisiana, for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., THOMAS F. DALEY, and WALTER J. ROTHSCHILD.
WALTER J. ROTHSCHILD, Judge.
Defendant, Luther McFarland, was charged by grand jury indictment with second degree murder in violation of LSA-R.S. 14:30.1 and pled not guilty at the arraignment. Brian Fullilove, Morris McFarland, Yarnall McFarland,[1] and Derrick Williams were also indicted.[2]
On January 20, 2005, all of the cases of the co-defendants were severed. On this same date, after a hearing, the trial judge denied Luther McFarland's motion to suppress his statement and identification. The trial judge also denied a motion to quash the arrest warrant, which was filed by Fullilove and adopted by Luther McFarland.
On June 8, 2005, the defendant proceeded to trial by a twelve-person jury, which found him guilty as charged the next day. The defendant filed a motion for a new trial, which the trial judge denied on June 28, 2005 prior to sentencing the defendant to life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence. Thereafter, the trial judge denied the defendant's motion for reconsideration of sentence and granted the motion for appeal.
FACTS
On May 10, 2004, Arthur Buras was living in one side of a double located at 2819 Tugie Drive in Metairie. At approximately 12:30 a.m., he heard loud noises *1135 coming from the other side of the double, 2817 Tugie Drive, where the victim, 23-year-old Coulton Lyell, Jr., lived. Mr. Buras looked out of his bedroom window and saw three black males trying to break through the victim's front door. He heard muffled voices, and then heard a gunshot. When he looked outside of the front window, he saw the three men running down Tugie Drive toward Park Manor. When they reached the corner, they started walking toward Lafreniere Drive. Mr. Buras never got a good look at any of their faces.
Sergeant Donald Meunier, Lieutenant Dennis Thronton and other officers of the Jefferson Parish Sheriff's Office responded and found the victim on the floor in a bedroom with a gunshot wound to the neck.[3] The State's forensic pathologist, Dr. Susan Garcia, testified the victim sustained a gunshot wound to the left side of his neck, which resulted in injury to the left lung. The victim also had patterned abrasions on his left forehead. Dr. Garcia explained the object that struck the victim's forehead imprinted the skin with the particular pattern. Based on the gunpowder marks, or stippling, near the wound, Dr. Garcia characterized the wound as an intermediate range gunshot wound. She explained that it was further away than close range, which is a contact wound, but closer than distant range, which is an undetermined distance away. A projectile was recovered from the victim's body. The victim's toxicology test revealed the presence of marijuana, cocaine, amphetamine, methadone, benzodiazepine, and opiate.
The police found the victim's wallet, containing over $200 in cash on the bedroom floor. Police found a dresser drawer opened in the bedroom. A .40 caliber casing was recovered from the scene. The police found the front door opened, with shoe prints on it. The deadbolt and door frame were damaged. The back door, which was a partial-glass paned door, contained a broken pane. The police did not find any cocaine in the house.
After a lengthy investigation, an arrest warrant for the defendant was issued on August 6, 2004, and the defendant was arrested on August 9, 2004. After he was arrested and waived his rights, the defendant made a tape-recorded statement to Sergeant Meunier, which was admitted in evidence and was played for the jury at trial. Initially, the defendant denied that he was on Tugie Drive in the early morning hours of May 10, 2004. Thereafter, the defendant admitted that the gun discharged when he struck the victim after breaking into the house to steal the victim's cocaine. The defendant said he had never met the victim, but had heard of him. The defendant explained that, on the day before, Yarnell McFarland told him that she had seen a large amount of cocaine in the victim's house. The defendant, Morris and others had discussed earlier in the day that they would break in and take the cocaine while no one was home at the victim's house. Later that night, Morris McFarland and Wooder[4] picked up the defendant at his job at Popeye's and then brought him home. They left and returned with Derrick. The defendant hesitated because they were doing drugs, but the defendant said he was "inspired to go" "by [their] situation going with money." The defendant retrieved his *1136 gun, a black Glock .40 caliber, and left with Morris and the others.[5]
When Morris neared the victim's house, Luther and the others told Morris to stop around the corner because they did not want him to go with them. Luther and the others unsuccessfully tried to break in through the back door, but entered the front door after kicking it in. The defendant cocked the gun, since he "didn't know who was in there." The defendant called out, but no one ever responded, so he believed no one was home. The trio entered the victim's bedroom and found him on the bed. The defendant struck the victim with the gun and it "went off." The defendant said he did not mean to shoot the victim. They were asking him where the drugs were, and after the victim was shot, he tried to tell them. Derrick looked everywhere, but they left empty-handed. Afterwards, they met up with Morris at the corner.
At trial, Louise Walzer, a firearms expert, was called as a defense witness. Ms. Walzer testified that she examined a fired cartridge case and an unknown caliber projectile. She stated that the fired case was a Remington Peters .40 S&W caliber. She opined that the projectile was consistent with .40 caliber S&W ammunition. She testified that, the chances were very rare, unless the gun had an aftermarket barrel, that the projectile was fired from a Glock .40 caliber. The projectile had a "G" on the bullet at the base, which was consistent with Dr. Garcia's mark.[6]
Shannon Herron testified that the defendant was employed at the Taco Bell in Kenner, and said that the defendant was a good employee. She stated she was not aware the defendant had a prior possession of cocaine conviction.
DISCUSSION
The defendant raises issues regarding the sufficiency of the evidence and another alleged trial error. When the issues on appeal relate to both the sufficiency of evidence and one or more trial errors, the reviewing court should first determine the sufficiency of the evidence by considering the entirety of the evidence. State v. Hearold, 603 So.2d 731, 734 (La. 1992). If the reviewing court determines that the evidence was insufficient, then the defendant is entitled to an acquittal, and no further inquiry as to trial errors is necessary. Id. On the other hand, when the entirety of the evidence, both admissible and inadmissible, is sufficient to support the conviction, the defendant is not entitled to an acquittal, and the reviewing court must then consider the assignments of trial error to determine whether the accused is entitled to a new trial. Id. Therefore, we will address defendant's argument regarding the sufficiency of the evidence before we address the other assignment.
The defendant contends that the trial court erred in failing to grant his motion for a new trial because the verdict was contrary to the law and the evidence, pursuant to LSA-C.Cr.P. art. 851(1). Specifically, the defendant contends the evidence was legally insufficient evidence to support a verdict of second degree murder. The State responds that a rational fact-finder, after viewing the evidence in the light most favorable to the prosecution, could have found beyond a reasonable doubt that the defendant was guilty of second degree murder.
The denial of a defendant's motion for new trial, based on LSA-C.Cr.P. art. *1137 851(1), presents nothing for review on appeal. State v. Hampton, 98-0331 (La.4/23/99), 750 So.2d 867, 880, cert. denied, 528 U.S. 1007, 120 S.Ct. 504, 145 L.Ed.2d 390 (1999). However, the Louisiana Supreme Court and this Court have addressed the constitutional issue of sufficiency of the evidence under such circumstances. See, State v. Hampton, supra, and State v. Blume, 06-131 (La.App. 5 Cir. 7/25/06), 939 So.2d 472, 476; State v. Lyles, 03-141 (La.App. 5 Cir. 9/16/03), 858 So.2d 35, 50. Therefore, the sufficiency of the evidence is properly before this Court.
The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922, 930, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998). The rule as to circumstantial evidence is "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." LSA-R.S. 15:438. This is not a separate test from the Jackson standard, but rather provides a helpful basis for determining the existence of reasonable doubt. State v. Wooten, 99-181 (La.App. 5 Cir. 6/1/99), 738 So.2d 672, 675, writ denied, 99-2057 (La.1/14/00), 753 So.2d 208. Ultimately, all evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. Id.
Second degree murder is defined as the killing of a human being when the offender 1) has specific intent to kill or to inflict great bodily harm; or 2) is engaged in the perpetration or attempted perpetration of one of several enumerated felonies, including aggravated burglary, even though he has no intent to kill or to inflict great bodily harm. LSA-R.S. 14:30.1(A). See, State v. Kirkland, 01-425 (La.App. 5 Cir. 9/25/01), 798 So.2d 263, 268, writ denied, 01-2967 (La.10/14/02), 827 So.2d 415.
Specific criminal intent exists "when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." LSA-R.S. 14:10(1). Specific intent need not be proven as a fact, but may be inferred from the circumstances surrounding the offense and the conduct of the defendant. State v. Graham, 420 So.2d 1126, 1127 (La.1982); State v. Young, 05-702 (La.App. 5 Cir. 2/14/06), 938 So.2d 90, 95.
One part of the defendant's challenge to his conviction is that he lacked the specific intent to kill when he struck the victim with the gun. In his statement, the defendant claims he cocked the gun, which he said was a Glock, after entering the house and that the gun discharged when he struck the victim. He said that he had forgotten the gun was loaded and that he had cocked it. However, there was evidence from which the jury could have inferred that the gun did not fire as the defendant claimed. Sergeant Meunier testified that a Glock has an internal cocking mechanism, so that when the trigger is pulled, the gun fires. Sergeant Meunier also testified that he could not fathom how the victim could have sustained the gunshot wound to the throat if the defendant had struck the victim in the head, as he claimed. Additionally, Dr. Garcia testified that it would be unlikely for the gunshot wound to occur simultaneously with the patterned abrasion on the victim's forehead.
Even if the victim died in the fashion the defendant claims, we find the evidence was *1138 sufficient to prove the defendant had the requisite intent. In State v. Price, (La. App. 1 Cir.1986), 498 So.2d 244, 246-248, writ denied, 503 So.2d 474 (La.1987), the court held that there was sufficient evidence the defendant had the specific intent to kill or to inflict great bodily harm to support his second degree murder conviction where the defendant shot the victim in the neck from a distance of two to three feet away. See also, State v. Buchanan, 94-488 (La.App. 3 Cir. 11/2/94), 649 So.2d 586, 589-590, writ denied, 94-2956 (La.3/24/95), 651 So.2d 287, which held there was sufficient evidence that defendant possessed specific intent to kill or inflict great bodily harm upon the victim to sustain second-degree murder conviction, although the defendant alleged that he was poking the victim to make him exit a car when the gun accidentally discharged.
Moreover, we find there was sufficient evidence for the jury to have convicted the defendant of felony second degree murder, which does not require the specific intent to kill or to commit great bodily harm. Rather, under the felony murder doctrine, the State must prove the commission of the underlying felony or the attempt thereof. State v. Kirkland, supra. According to LSA-R.S. 14:60, aggravated burglary is the unauthorized entering of any inhabited dwelling, or of any structure, water craft, or movable where a person is present, with the intent to commit a felony or any theft therein, if the offender is armed with a dangerous weapon; or after entering arms himself with a dangerous weapon; or commits a battery upon any person while in such place, or in entering or leaving such place.
In this case, the evidence at trial showed the victim died after the defendant, who was armed with a gun, entered the victim's house with the intent to steal the victim's cocaine. Additionally, the evidence also showed the defendant committed a battery upon the victim while in the house. Thus, the evidence showed that the victim died during an aggravated burglary in which the defendant participated, which is sufficient to sustain a felony second degree murder conviction. See, State v. Kirkland, supra.
An appellate court's primary function is not to re-determine the defendant's guilt or innocence in accordance with its appreciation of the facts and credibility of the witnesses. Rather, its function is to review the evidence in the light most favorable to the prosecution and determine whether there is sufficient evidence to support the jury's conclusion. State v. Kirkland, 798 So.2d at 269. Viewed in the light most favorable to the prosecution, we conclude the evidence was sufficient to support the defendant's second degree murder conviction under either theory of second degree murder.
This assignment of error is without merit.
Defendant also contends that he was arrested without probable cause because the affidavit contained false and misleading information. The defendant contends that the defective warrant made his arrest unlawful and all evidence should have been suppressed as the product of an illegal arrest. As such, the trial judge should have granted the motion to quash the arrest.
Specifically, the defendant contends that the affidavit did not contain these facts: (1) that Danny Jackson implicated the defendant only after being questioned by the police for 8 hours following an unrelated arrest for drugs and felon in possession of a firearm; and (2) that Jackson made the claims while attempting to make a deal regarding the unrelated arrest. The State responds that the trial judge did not abuse *1139 his discretion in denying the motion because the arrest warrant was valid.
The record reflects that the defendant did not file a motion to quash his arrest warrant, but rather relied on Brian Fullilove's motion to quash. As background to this assignment, the record reflects that the cases of Brian Fullilove, Derrick Williams and Luther, Morris, and Yarnell McFarland were severed on January 20, 2005. Nevertheless, several motions pertaining to all of these defendants were heard that day. Specifically, the record reflects that the trial judge heard and denied a motion to suppress Fullilove's statement; motions to suppress Luther McFarland's statement and identification; and a motion to suppress Morris McFarland's statement.
The trial judge then took up Fullilove's motion to quash his arrest warrant. During questioning, Sergeant Meunier testified that he had interviewed Yarnell and Danny Jackson on several occasions since the murder and that they had consistently denied knowledge of the murder. On August 3, 2004, he interviewed them after they were arrested on drug charges. Initially, both of them denied knowledge of the homicide, but they ultimately revealed information about the homicide. Jackson, who was facing charges of felon with a firearm and possession with intent to distribute marijuana and cocaine, asked Sergeant Meunier what benefits he would receive if he provided information regarding the homicide. Jackson was in custody from 8:30 p.m., and made his taped statement at 5:57 a.m. Sergeant Meunier obtained an arrest warrant for Fullilove on August 6, 2004, after completing an affidavit and presenting it to the magistrate. Fullilove introduced the warrant and affidavit into evidence.
After Fullilove and the State rested, Luther and Morris McFarland moved to adopt Fullilove's motion. Fullilove then argued that the affidavit in support of his warrant was deficient because it did not include Yarnell and Jackson's criminal records; the fact that they resisted making statements several times; and the fact that Jackson did not make a statement until trying to negotiate a deal with the police. The McFarlands then moved to adopt Fullilove's argument. The trial judge ruled the warrant was not defective as follows:
THE COURT:
All right. This was an arrest made with a warrant. Based on what is stated in the warrant, I don't think any of the claims of missing information would have, should have made a difference.
Furthermore, under most circumstances, the officer could have actually, if he had probable cause, made the arrest himself without a warrant for arrest. Under the Code, he was free to do that. He chose to take it to a magistrate, to Judge Sullivan in this case. Judge Sullivan accessed [sic] it. The witness, the detective, as the affiant in this case, testified that he believes what he was told. I see nothing unconstitutional about it.
These motions to suppress evidence as fruit of a poisonous tree, namely a defective warrant are denied. I don't find the warrant defective.
LSA-C.Cr.P. art. 202 provides for issuing an arrest warrant as follows:
Art. 202. Warrant of arrest; issuance
A. A warrant of arrest may be issued by any magistrate pursuant to this Paragraph or as provided in Paragraph D of this Article and, except where a summons is issued under Article 209, shall be issued when:
(1) The person making the complaint executes an affidavit specifying, to his best knowledge and belief, the nature, *1140 date, and place of the offense, and the name and surname of the offender if known, and of the person injured if there be any; and
(2) The magistrate has probable cause to believe that an offense was committed and that the person against whom the complaint was made committed it.
. . . .
The arrest warrant affidavit need only specify the nature, date and place of the offense along with the name of the offender. See, State v. Cook, 404 So.2d 1210, 1212 (La.1981). The issuance of an arrest warrant, unlike a search warrant, is valid if the magistrate has within his knowledge sufficient facts to establish probable cause for the arrest. See, State v. Cook, supra, citing State v. Haynie, 395 So.2d 669 (La.1981). Consequently, when a reviewing court is confronted with an arrest warrant based upon a confusing or constitutionally inadequate affidavit, the matter will be remanded for additional information regarding the facts within the magistrate's possession. State v. Cook, supra.
Probable cause exists when the arresting officer has knowledge of facts and circumstances based upon reasonable and trustworthy information that are sufficient to justify a man of average caution in the belief that the person he is going to arrest has committed or is committing an offense. State v. Flagg, 99-1004 (La.App. 5 Cir. 4/25/00), 760 So.2d 522, 528, writ denied, 00-1510 (La.3/9/01), 786 So.2d 117. A determination of probable cause does not require the resolution of conflicting evidence as required at trial. Gibson v. State, 99-1730 (La.4/11/00), 758 So.2d 782, 788-789, cert. denied, 531 U.S. 1052, 121 S.Ct. 656, 148 L.Ed.2d 559 (2000). Credibility determinations as well are seldom crucial in deciding whether there is available evidence supporting a reasonable belief that the person going to be arrested has committed a crime. Id.
In State v. McCartney, 96-58 (La.App. 3 Cir. 10/9/96), 684 So.2d 416, 421-423, writ denied, 97-0508 (La.9/5/97), 700 So.2d 503, cert. denied, 522 U.S. 1002, 118 S.Ct. 573, 139 L.Ed.2d 412 (1997), the court held that the affidavit was sufficient to issue an arrest warrant regardless of the magistrate's lack of knowledge of the contradictory statement where the witness initially denied knowledge of the crime. In McCartney, the defendant argued that the arrest warrant should have been suppressed because the warrant was based on the statement of the co-defendant's wife and the police did not disclose all contradictory and conflicting testimony given by this witness to the magistrate. The McCartney court reviewed the warrant and affidavit, which had been admitted at the suppression hearing, and concluded that the contradictory statement, when considered with the facts included in the affidavit, did not negate the existence of probable cause for defendant's arrest. Id. at 422. The McCartney court noted that "[i]t is not uncommon for many individuals to deny guilty knowledge when first questioned by authorities." Id.
Unlike McCartney, the defendant in the present case did not introduce the affidavit or the warrant at the suppression hearing. According to LSA-C.Cr.P. art. 703(D), the defendant generally has the burden of proving the grounds of a motion to suppress:
On the trial of a motion to suppress filed under the provisions of this Article, the burden of proof is on the defendant to prove the ground of his motion, except that the state shall have the burden of proving the admissibility of a purported confession or statement by the defendant or of any evidence seized without a warrant.
*1141 In State v. Williams, 01-0732 (La.11/28/01), 800 So.2d 819, 827, cert. denied, 537 U.S. 1203, 123 S.Ct. 1275, 154 L.Ed.2d 1045 (2003), the Louisiana Supreme Court held the defendant failed to meet his burden of proving the grounds of his motion to suppress evidence because the evidence was seized pursuant to a warrant. An affidavit supporting a search warrant is presumed to be valid and the defendant has the burden of proving that the representations in the affidavit are false. State v. Singleton, 98-387 (La.App. 5 Cir. 10/28/98), 723 So.2d 484, 488, writ denied, 99-0101 (La.5/7/99), 741 So.2d 30.
Applying the foregoing principles, the affidavit accompanying the arrest warrant was presumed valid and that the defendant had the burden to prove the grounds of a motion to quash the arrest warrant. We fail to find that the defendant met his burden of proof in this case because the defendant did not introduce any evidence  testimonial or otherwise  at the hearing. Rather, defendant apparently moved to adopt Fullilove's motion based on the assumption that Fullilove's affidavit was identical to the defendant's affidavit. However, there is no proof that the affidavits were identical. Moreover, the defendant did not question Sergeant Meunier regarding the affidavit or what he told the magistrate when securing the warrant in the defendant's case. Rather, the testimony at the hearing, as well as the warrant and accompanying affidavit introduced at the hearing, pertained to Brian Fullilove. A trial judge is afforded great discretion when ruling on a motion to suppress, and his ruling will not be disturbed absent an abuse of that discretion. State v. Haywood, 00-1584 (La.App. 5 Cir. 3/28/01), 783 So.2d 568, 574. Because we find that the defendant failed to meet his burden of proving the allegations of the motion to quash the arrest warrant, we find that there is insufficient basis to disturb the trial judge's ruling.
This assignment is without merit.
ERROR PATENT DISCUSSION
The Defendant requests an error patent review. However, this Court routinely reviews the record for errors patent in accordance with LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir. 1990) regardless of whether defendant makes such a request. The following matters were discovered:
The record does not reflect that the trial judge informed the defendant of the prescriptive period for filing post-conviction relief, as required by LSA-C.Cr.P. art. 930.8(C). Therefore, we remand the matter for the trial judge to inform the defendant of the prescriptive period for filing for post-conviction relief by sending appropriate written notice to the defendant within ten days of the rendition of this Court's opinion and by filing written proof in the record that the Defendant received the notice. See, State v. Hutchinson, 02-60 (La.App. 5 Cir. 5/15/02), 817 So.2d 500, 509.
We also find that the trial minute entry shows 14 jurors and one alternate juror were selected.[7] However, the transcript of the verdict reflects that the court asked if "10 of the 12 of you" concurred in the verdict, to which the foreperson answered affirmatively. The judge also stated that the ballots were counted and they showed a unanimous verdict from 12 jurors. Therefore, we find that the minute entry is incorrect, and that the defendant was tried by a 12-person jury.
When there is a conflict between the transcript and the commitment, the transcript controls. State v. Lynch, 441 *1142 So.2d 732 (La.1983). On remand, the trial court is ordered to correct the minute entry to show the correct number and names of the jurors.
CONCLUSION
Accordingly, for the reasons assigned herein, defendant's conviction and sentence are affirmed. The matter is further remanded to the trial court with instructions consistent with this opinion.
CONVICTION AND SENTENCE AFFIRMED; CASE REMANDED.
NOTES
[1] McFarland is referred to in the indictment as "Yarnall," but in the testimony as "Yarnell."
[2] Morris McFarland's case is a companion appeal, No. 07-KA-26, also set on the current docket.
[3] Sergeant Meunier is also referred to in the transcript as "Detective" Meunier.
[4] Although this record does not so reflect, Morris McFarland's statement in the companion case of State v. Morris McFarland 07-26 (La.App. 5 Cir. 5/29/07), ___ So.2d ___, 2007 WL 1545837 also set on the current docket, reflects that Brian Fullilove's nickname is "Wooter."
[5] Morris is also known as "Duane."
[6] The autopsy report reflects that Dr. Garcia put a "G" on the base of the projectile she removed from the victim.
[7] The voir dire was not transcribed.