807 So.2d 962 (2002)
STATE of Louisiana
v.
John F. ROYAL.
No. 01-KA-438.
Court of Appeal of Louisiana, Fifth Circuit.
January 15, 2002.
Paul D. Connick, District Attorney, 24th Judicial District, Thomas J. Butler, Terry M. Boudreaux, Nancy A. Miller, Cameron M. Mary, Assistant District Attorneys, Gretna, LA, Attorneys for Appellee.
Margaret S. Sollars, Thibodaux, LA, Attorney for Appellant.
Panel composed of Judges THOMAS F. DALEY, MARION F. EDWARDS and WALTER J. ROTHSCHILD.
MARION F. EDWARDS, Judge.
Defendant/Appellant John Royal appeals his conviction for simple burglary. Royal asserts that the trial court erred both in imposing an arbitrary time limit during voir dire, and in allowing the State to peremptorily excuse jurors on the basis of *963 gender alone. For the following reasons, the judgment of the trial court is affirmed.
The Jefferson Parish District Attorney filed a bill of information charging the defendant, John Royal, with simple burglary, a violation of LSA-R.S. 14:62. At arraignment, Royal pled not guilty. On January 23, 2001, a six-person jury found Royal guilty as charged. On January 26, 2001, the trial judge sentenced Royal to ten years of imprisonment at hard labor. That same day, Royal filed a written motion for appeal, which the trial judge granted.[1]
The State filed a multiple offender bill of information, alleging that Royal was a second felony offender based on a prior conviction of attempted first degree murder. Royal stipulated to the allegations contained in the multiple bill on June 1, 2001. The trial judge vacated the original sentence, and sentenced Royal as a second felony offender to ten years at hard labor, to be served consecutively with a sentence that Royal was serving for a parole violation.
On October 13, 2000, Ivory Smith was employed as a bartender at Eddie's Bar and Restaurant in Kenner, Louisiana. At trial, Ms. Smith testified that she usually worked from 10:00 p.m. until the bar closed, which was usually between the hours of 5:00 a.m. and 7:00 a.m. Smith was just about to leave from work that morning, when the manager of the bar, Calvin Wilson, told her that her car's alarm was sounding. When Smith and Wilson reached her car, they saw that the passenger's side window was broken, and that someone was inside. Upon seeing Wilson and Smith, the person in the car abruptly sat up and shortly thereafter started running. Wilson chased and caught the person, who was later identified as the defendant, John Royal. Wilson restrained Royal until the police arrived. Wilson also said that Royal had a screwdriver in his possession.
Officer Sclafini of the Kenner Police Department responded to the scene. Sclafini testified at trial that the frame of the car's window bore pry marks, believed to be caused by a screwdriver. The glove box was open and its contents had been scattered about the car. Officer Sclafini said that there were shards of glass in Royal's clothing. At trial, both Wilson and Smith positively identified Royal as the person who had been inside Smith's car.
In his first assignment of error, Royal argues that the Trial Court erred in imposing an arbitrary time limit during voir dire.
Article I, Section 17(A) of the Louisiana Constitution guarantees that "the accused shall have a right to full voir dire examination of prospective jurors and to challenge jurors peremptorily." According to LSA-C.Cr.P. art 786, the court, the State, and the defendant shall have the right to examine prospective jurors and the scope of the examination shall be within the discretion of the court. In State v. Hall,[2] the Louisiana Supreme Court summarized the jurisprudence regarding the limitation of voir dire as follows:
The purpose of voir dire examination is to determine qualifications of prospective jurors by testing their competency and impartiality. It is designed to discover bases for challenges for cause and to secure information for an intelligent *964 exercise of peremptory challenges. The scope of voir dire examination is within the sound discretion of the trial judge and his ruling will not be disturbed on appeal in the absence of a clear abuse of discretion. However, although the trial judge is vested with discretion to limit the voir dire examination, he must afford wide latitude to counsel in the conduct of voir dire examination to effectuate the accused's right to full voir dire of prospective jurors embodied in La. Const. art. 1, § 17. In order to determine whether a trial judge has in fact afforded a sufficiently wide latitude to the defendant in examining prospective jurors, a review of the trial judge's rulings should be undertaken only on the record of the voir dire examination as a whole. State v. Williams, 457 So.2d 610 (La.1984); State v. Jackson, 358 So.2d 1263 (La.1978).
We, as well as the Louisiana Supreme Court, have noted in the past that a "trial judge has much discretion to limit voir dire as long as the defense is not deprived of a reasonable opportunity to intelligently exercise his challenges."[3] In previous cases, we have affirmed decisions by a trial court to impose time restrictions on voir dire. In State v. Shaw,[4] we held that the trial court did not abuse its discretion in setting a forty-five minute time limitation on the second day of voir dire in an attempted first degree murder case. We further note that the issues in Shaw were significantly more complex than in this case, because Shaw's defense was premised on insanity and in part, intoxication.[5]
In this case, before the attorneys began questioning the prospective jurors, the trial judge stated that "[a]s always the case, you're limited to 30 minutes on the first set, both sides and then 20 minutes thereafter. You need not take the entire amount of time." Neither the State nor the defense objected. However, after the State questioned the first panel, the defense objected "[f]or the record," to the limitations placed on voir dire. The defense completed voir dire with no further objections to the time limitations.
Similar to the defendant in Shaw, Royal has not demonstrated how he was prejudiced by the time limits on voir dire and, after reviewing the record, it does not appear that the trial judge abused his discretion by the time limitations imposed in this case. Although the defense objected for the record before questioning the panel, the defense did not request additional time to examine the prospective jurors. Royal's attorney thoroughly questioned the prospective jurors, was able to fully explore their views, and was further able to exercise challenges to prospective jurors. In light of the foregoing, we find this assignment to be without merit.
In his second assignment of error, Royal argues that the trial judge should have concluded that a pattern of discrimination existed because the State used three peremptory challenges in a row to exclude female jurors. The State responds that the trial judge correctly denied the defense's challenges to the State's actions because the defense failed to establish a prima facie case of gender-based discrimination.
In Batson v. Kentucky,[6] the United States Supreme Court held that the use of *965 peremptory challenges based solely upon a juror's race is prohibited by the Equal Protection Clause of the United States Constitution. The Batson criteria are codified in LSA-C.Cr.P. art. 795. The United States Supreme Court extended Batson in J.E.B. v. Alabama ex rel. T.B.,[7] holding that the Equal Protection Clause also prohibits discrimination in jury selection on the basis of gender.
The United States Supreme Court has set forth a three-tiered analysis to be applied when addressing a claim that peremptory challenges were exercised in a manner that violates the Equal Protection Clause. First, the party objecting to the peremptory challenge must make a prima facie showing that the peremptory challenge was exercised to exclude prospective jurors solely on the basis of race or gender. If that showing is made, then the other party must articulate a race or gender-neutral explanation for the strike. If a gender or race-neutral explanation is tendered, the trial court must determine, in step three, whether there was purposeful discrimination in the use of the challenge. The ultimate burden of showing purposeful discrimination remains on the party opposing the strike.[8]
In State v. Duncan,[9] the Louisiana Supreme Court recently summarized the necessary factors to show a prima facie case of discrimination as follows:

Batson sets forth a combination of three factors that the challenging party, here the defendant, must establish to make a prima facie case ... First, the prosecutors's peremptory challenges were directed at members of cognizable racial and gender groups. Second, the challenges were peremptory rather than for cause. State v. Givens, 99-3518 at p. 5 (La.1/17/01), 776 So.2d 443, 449. The third factor ... is that "the defendant must show circumstances sufficient to raise an inference that the prosecutor struck the venire person on account of being a member of that cognizable group."
Relevant facts or circumstantial evidence of discriminatory intent include proof of disparate impact and a "pattern" of strikes against jurors, as well as questions and statements made during voir dire.[10]
In the present case, the State exercised its first two peremptory challenges on female prospective jurors in the first panel, Ms. Zebrick and Ms. Walters. The State exercised a third peremptory challenge to excuse Ms. Borland after questioning the prospective jurors from the second panel, and at that time the defense objected on the basis that the State had exercised its peremptory challenges to exclude only female prospective jurors.
After counsel for Royal made the objection, the prosecutor volunteered that Ms. Borland was challenged because she had been the victim of a burglary. The trial judge then pointed out that Ms. Zebrick had also been the victim of a burglary, and had also been caught in the cross fire of a shoot out. The trial judge added that it was a "close call" to strike Ms. Zebrick for cause. Thereafter, the trial judge stated that Ms. Zebrick was not part of a pattern because he "thought that she was probably one that could have been stricken ... for cause." When the defense inquired about *966 the State's reasons for excluding Ms. Walters, the court questioned whether two peremptory challenges constituted a pattern of exclusion on the basis of gender. Nevertheless, the court asked the prosecutor to provide neutral reasons for excluding Ms. Borland.
While the trial judge in this case did not expressly state that the defense had not established a prima facie case of discrimination, it seems that the judge's comments indicate a conclusion that the defense had not met its burden in step one. After the above discussion about Ms. Zebrick, the court addressed the prosecutor as follows: "By the way now, you started to say before Is there a reasonYou don't have to give one at this point but is there a reason for striking Patricia Borland?" The prosecutors then stated that Ms. Borland was the victim of a burglary. Thereafter, the court stated, "Okay, I'll allow that and your objection is noted."
We also note that although the State did exercise three peremptory challenges in a row on female prospective jurors, the record reflects the State had three peremptory challenges left after jury selection was completed. The record further reflects that four women ultimately served on the jury of six persons. If the State had been exercising its challenges in a discriminatory manner, the State could have used its remaining peremptory challenges to exclude three more women. Accordingly, it appears that defendant failed to establish a prima facie case of gender-based discrimination. Therefore, it was not necessary for the prosecutor to articulate gender-neutral explanations for the strikes.[11] We find this assignment to be without merit.
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux,[12] and State v. Weiland.[13] The following errors patent are noted: The commitment reflects that the trial judge correctly advised Royal of the period for filing an application for post-conviction relief at the original sentencing and the multiple offender sentencing, while the transcript does not. Generally, when there is a discrepancy between the minutes and the transcript, the transcript prevails.[14]
The sentencing transcripts reflect that the trial judge did not advise defendant of the prescriptive period for filing post-conviction relief at the original sentencing pursuant to LSA-C.Cr.P. art. 930.8 and failed to completely advise defendant of those provisions at the multiple offender sentencing in that the judge failed to indicate when the period began to run. Therefore, we remand the case to the district court with an order to inform Royal of the provisions of LSA-C.Cr.P. art. 930.8, by sending appropriate written notice to Royal within ten days of the rendition of this Court's opinion and to file written proof that defendant received the notice in the record.[15]
Accordingly, we affirm Royal's conviction and remand the matter with instructions to the trial court to correct errors patent on the face of the record.
AFFIRMED; REMANDED WITH INSTRUCTIONS.
NOTES
[1] We note that Royal's motion for appeal proved to be premature when it was filed after conviction and sentence on the offense but before he was sentenced as a multiple offender. However, this procedural defect was cured by Royal's subsequent resentencing. State v. Balser, 96-443 (La.App. 5 Cir. 11/14/96), 694 So.2d 351, 354; State v. Page, 96-227 (La.App. 5 Cir. 8/28/96), 680 So.2d 104, 106 n. 2.
[2] 616 So.2d 664, 668-669 (La.1993).
[3] State v. Lee, 559 So.2d 1310, 1316 (La. 1990), cert. denied, 499 U.S. 954, 111 S.Ct. 1431, 113 L.Ed.2d 482 (1991); State v. McCorkle, 97-966 (La.App. 5 Cir. 2/25/98), 708 So.2d 1212, 1215.
[4] 00-1051 (La.App. 5 Cir. 2/15/01), 785 So.2d 34, 42.
[5] Id. at 41.
[6] 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
[7] 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994).
[8] Purkett v. Elem, 514 U.S. 765, 767-768, 115 S.Ct. 1769, 1770-1771, 131 L.Ed.2d 834 (1995); State v. Williams, 96-1023 (La.1/21/98), 708 So.2d 703, 726, cert. denied, 525 U.S. 838, 119 S.Ct. 99, 142 L.Ed.2d 79 (1998).
[9] 99-2615 (La.10/16/01), 802 So.2d 533
[10] Batson, 476 U.S. at 96-97, 106 S.Ct. at 1723.
[11] State v. Green, 94-0887 (La.5/22/95), 655 So.2d 272, 287-288; State v. Bourgeois, 00-13 (La.App. 5 Cir. 4/11/01), 786 So.2d 771, 774.
[12] 312 So.2d 337 (La.1975).
[13] 556 So.2d 175 (La.App. 5 Cir.1990).
[14] State v. Lynch, 441 So.2d 732, 734 (La. 1983); State v. Haynes, 96-84 (La.App. 5 Cir. 5/25/96), 676 So.2d 1120, 1123.
[15] State v. Gibson, 97-1203 (La.App. 5 Cir. 3/25/98), 708 So.2d 1276, 1281.