889 So.2d 1093 (2004)
STATE of Louisiana
v.
David WILLIAMS.
No. 04-KA-608.
Court of Appeal of Louisiana, Fifth Circuit.
November 30, 2004.
*1096 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, William C. Credo, Gevin Grisbaum, Assistant District Attorneys, Gretna, LA, for Plaintiff/Appellee.
Margaret S. Sollars, Thibodaux, LA, for Defendant/Appellant.
Panel composed of Judges MARION F. EDWARDS, SUSAN M. CHEHARDY and WALTER J. ROTHSCHILD.
MARION F. EDWARDS, Judge.
Defendant/Appellant, David Williams, appeals his conviction for second degree *1097 murder, a violation of LSA-R.S. 14:30.1. For the following reasons, defendant's conviction is affirmed, and we remand the case in order to correct an error patent on the face of the record.

FACTS AND PROCEDURAL HISTORY
On February 8, 2001, the Jefferson Parish Grand Jury issued an indictment charging the defendant, David Williams, with one count of second degree murder, a violation of LSA-R.S. 14:30.1. On February 9, 2001, Williams pled not guilty. On February 13, 2003, the trial court denied Williams' motions to suppress the confession, the evidence and the identification. Following a jury trial, on July 1, 2003 Williams was found guilty as charged of the second degree murder of Rashaan White. On September 4, 2003, the trial court denied Williams' motions for post-verdict judgment of acquittal and new trial, and sentenced Williams to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence.
Detective Michael Cunningham of the Kenner Police Department testified that, on November 25, 2000, he investigated the homicide of Rashaan White which occurred in a barber shop located at 309 Pollack Avenue in Kenner, Louisiana. An arrest warrant was thereafter issued for one of the suspects, Arvel Gurganus.
In his police statement, Gurganus admitted to knowing David Williams and said that he picked up Williams in a stolen blue and white Astrovan on the morning November 25, 2000, and that together they discussed committing a robbery. Later, Gurganus and Williams picked up another man in Destrehan, identified as Darnell Turner.
Williams continued to discuss committing a robbery with Gurganus and the other passenger. Gurganus then stopped the van by the store in Kenner as directed by Williams. While Williams and the other passenger, armed with an assault rifle, got out of the van, Gurganus stayed behind in the vehicle where he then heard gun shots. Gurganus said did not see Williams get out of the van with a gun or shoot anyone, but when Williams got back in the van, he had a semiautomatic pistol with a clip emptied in the shooting. The three fled the scene in the van that later stalled and caught on fire. They abandoned the van behind a dumpster after getting off the expressway. The van was processed and a rifle cartridge and casing were found.
Witnesses Joshua Riley, Floyd Bell and John Alexander identified David Williams as one of the shooters from photographic line-ups. Based upon this information, Detective Cunningham obtained an arrest warrant for David Williams. In Williams' statement to the police, he said that he did not kill anyone, but that he was making his peace with God and had accepted his death penalty.
David Williams testified that he knew Rashaan White, because he was his barber when he lived in Kenner, but that he did not kill him. Williams admitted to knowing eyewitnesses Alexander, since he was in school; Bell, all of his life; and Riley. Williams said that he and Riley never got along, and that Bell and Riley were "hustlers," who sold rocks of cocaine in front of the victim's barber shop. Williams testified that Bell and Riley lied about his participation in the shooting of Rashaan White, because of an altercation he had the Friday or Saturday before the shooting with Tony Russell, the head of a group to which Bell and Riley belonged.
Williams also admitted to knowing Gurganus from where his mother lived. Williams said that on the morning of the shooting, he flagged down Gurganus in a van and asked him for a ride to get loaded. They stopped at his grandmother's house *1098 to use the bathroom, and then proceeded to Woodmere where they met up with co-defendant Darnell Turner and his brother Marlon. He asked Marlon for some heroin, and then he and Gurganus went to Ridgefield. Williams claims that Gurganus never mentioned anything to him about a robbery.
Samuel Martin and Troy McCloud testified on the defendant's behalf. Troy McCloud testified that he knew Gurganus from jail. When he and Gurganus discussed this case, Gurganus told him that he was tricked by the police into implicating the two men charged with him and that neither of the men was with him during the shooting at the barber shop. Samuel Martin also testified that he knows Gurganus from jail. Martin stated that he and Gurganus discussed their respective cases, and Gurganus told him that the men he was charged with had nothing to do with the murder. Gurganus admitted to him that he was the driver of the van, and that he had implicated the men he was charged with in order to get a deal for a lighter sentence.

LAW AND ARGUMENT
In his first assignment of error, Williams argues that the trial court erred in imposing restrictions on the defense counsel's voir dire examination. Specifically, Williams asserts that the defense counsel was not allowed to ask a question designed to ascertain whether a juror was a leader or a follower.
In the present case, the defense sought to ask the jurors a psychological question, in order to determine their propensity to be leaders or followers. The question pertained to whether politicians or people elected into high office locally, such as the mayor, chief of police, alderman, councilman, judges, district attorneys, and sheriffs are our community leaders or our public servants. The prosecution timely objected as to relevancy, suggesting that instead the defense was trying to find out what the potential jurors thought of political leaders in the State. The trial court sustained the objection.
Article I, Section 17(A) of the Louisiana Constitution guarantees that "[t]he accused shall have a right to full voir dire examination of prospective jurors and to challenge jurors peremptorily."[1] The trial court is vested with broad discretion in regulating the conduct of voir dire.[2] However, the limitations imposed by the trial court may not deprive counsel of a reasonable opportunity to determine grounds for cause challenges and to intelligently exercise peremptory challenges.[3] Counsel must be afforded wide latitude to conduct a voir dire examination to effectuate the accused's right to full voir dire of prospective jurors embodied in La. Const. art. I, § 17.[4]
The wide latitude to conduct a voir dire examination does not allow the defendant unlimited inquiry into all possible prejudices of prospective jurors, including their opinions on evidence, or its weight, hypothetical questions, or questions of law that call for any prejudgment of supposed facts in the case.[5] The scope *1099 of the examination lies within the discretion of the trial court, and its ruling will not be disturbed on appeal in the absence of a clear abuse of discretion.[6] Review of the trial judge's rulings on the record of the voir dire examination as a whole is undertaken, in order to determine whether a trial judge has in fact afforded sufficiently wide latitude to the defendant in examining prospective jurors.[7]
A review of the record, and, in particular, the trial judge's rulings during the voir dire examination, shows that the court afforded the defense wide latitude in examining prospective jurors. Prior to the trial court's sustaining the State's objection, counsel for the defendant questioned prospective jurors on their previous interactions with police (i.e., police chiefs and sheriffs) and the courts (i.e., judges and district attorneys), and their views on governmental policies on firearms and illegal drugs (i.e., the mayor and aldermen). Immediately, after the court sustained the State's objection, the defense was also able to ask the jurors to describe themselves in one word. Therefore, we find that the defense was able to inquire into the possible prejudices of prospective jurors to determine grounds for cause challenges and to intelligently exercise peremptory challenges without unlimited inquiry into all of the prospective jurors possible prejudices regarding political leaders, officials and specific groups in the State. The defense was further able to determine through subsequent psychological questioning the juror's propensity to be followers or leaders based on their descriptions of themselves.
Accordingly, we find this assignment to be without merit.
In his second assignment of error, Williams argues that the trial court erred in admitting witness Gurganus' statement into evidence because he was denied his right to confrontation guaranteed by Sixth Amendment to the United States Constitution and Louisiana Constitution article I, § 16, and furthermore, that the statement constituted hearsay. Williams further argues that he was not given the opportunity to confront Gurganus because his answers on the stand were unresponsive, which revealed that he had no intention of answering questions concerning his statement and/or participation in the crime.
In the present case, when called by the State, Arvel Gurganus refused to be sworn in and asserted his Fifth Amendment privilege refusing to testify even if the court granted the motion to compel his testimony.[8] The State argued that the defendant could not assert a Fifth Amendment privilege because he had already been convicted but, regardless, could be compelled to testify under penalty of contempt, after being given testimonial immunity, except for perjury.[9] The trial court found that Gurganus was immune from prosecution and compelled him to testify. When Gurganus refused to testify, the trial court allowed the State to question him before the jury about his refusal to testify and his statement to the police. Gurganus relented and did answer questions, insisting that *1100 he did not give a statement to the police, had no knowledge about the questions being asked by the prosecutor, and that the State had the "wrong person."
Gurganus ultimately did agree to answer the defense's questions as well. However, the questions posed by the defense concerned Gurganus' medical condition. When Gurganus' statement was introduced during the testimony of Detective Cunningham, the defense counsel did not contemporaneously object to its admission as hearsay, and later only objected to the introduction of the audiotape of the confession as cumulative.
In order to preserve the right to seek appellate review of an alleged trial court error, the party alleging the error must state an objection contemporaneously with the occurrence of the alleged error, as well as the grounds for that objection.[10] The purpose behind the contemporaneous objection rule is to put the trial judge on notice of an alleged irregularity allowing him the opportunity to make the proper ruling and correct any claimed prejudice to the defendant.[11] This prevents the defendant from gambling for a favorable verdict at trial, and then later utilizing appellate review to correct errors that might easily have been corrected by the trial judge.[12] Because, in the present case, the defendant has raised his objection to the admission of Gurganus' statement for the first time on appeal, there is no ruling for this Court to review.
Williams next asks us to determine whether his right to confrontation was violated by admitting into evidence at trial a non-testifying co-defendant's confession that contained statements, against his penal interests and others' statements that implicated the defendant.
The Sixth Amendment to the United States Constitution guarantees an accused in a criminal prosecution the right of to be confronted with the witnesses against him. The confrontation clause of the Louisiana Constitution specifically and expressly guarantees the accused the right "to confront and cross-examine the witnesses against him."[13] Confrontation does not only mean the ability to confront the witnesses physically. Its main and essential purpose is to secure, for the opponent, the opportunity of cross-examination.[14] Cross-examination is the principal way to test the believability and truthfulness of the testimony. A cross-examination has traditionally been used to impeach or discredit the witness.[15]
In this case, as previously noted, Arvel Gurganus refused to be sworn in and asserted his Fifth Amendment privilege against self-incrimination. The trial court then ruled that Gurganus was unavailable. After Gurganus was given testimonial immunity, he provided unresponsive answers to the prosecutor, when asked questions about his police statement. In his police statement, Gurganus admitted stealing a van on the morning November 25, 2000. It appears that Gurganus' statement qualifies under the declaration against penal interest exception to the hearsay rule making *1101 the statement admissible.[16] In his statement, Gurganus incriminates himself in the additional crime of stealing a van, thereby subjecting himself to additional criminal charges, which gives reliability to his statement.[17]
In Crawford v. Washington[18] however, which was rendered after the present case was tried and decided, the United States Supreme Court found that certain ex parte examinations, while admissible under modern hearsay rules, are exactly the kind of testimonial evidence against the accused that the confrontation clause is supposed to prevent: that is, testimonial evidence in the form of an out-of-court declaration to establish or prove a fact. The Supreme Court found that under the Sixth Amendment a necessary condition for the admissibility of the testimonial statements against an accused in a criminal case is the prior opportunity to confront the unavailable witness. The Court noted that statements taken by police in the course of interrogations are testimonial hearsay for purposes of the Sixth Amendment, and that these statements present a unique opportunity for prosecutorial abuse. Therefore, in light of Crawford v. Washington, in order for Gurganus' police statement to be admissible in the present case, the State had to show that Gurganus was unavailable and that there was a prior opportunity to confront the witness.
The first question under this analysis is whether Gurganus was unavailable. Under LSA-C.E. art. 804, "a declarant is `unavailable as a witness' when the declarant cannot or will not appear in court and testify to the substance of his statement made outside of court." This includes situations in which the declarant is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of his statement, persists in refusing to testify concerning the subject matter of his statement despite an order of the court to do so, or testifies to a lack of memory of the subject matter of his statement. Here, Gurganus first asserted his Fifth Amendment privilege, and then persisted in refusing to testify concerning the subject matter of his statement when questioned by the prosecutor, which would make him unavailable under LSA-C.E. art. 804.
The State argues in its brief that Williams cannot claim that he was denied his right to confrontation, because Gurganus agreed to answer the questions posed by the defense, and the defense instead chose not to confront the witness on the subject matter of his statement, but rather focused its questions on his mental health. The State is correct that the defense's questions focused on Gurganus' mental health, but the record reveals that prior to the witness's cross-examination Gurganus stated that he did not give a statement to the police and suggested that it must have been somebody with the same name. If Gurganus did not give the statement to the police, it would, in fact, have made no sense for the defense to ask Gurganus about a statement that he testified he did not make. Assuming that Gurganus had made the statement, he was still unavailable because he testified to a lack of memory of the subject matter of his statement. *1102 Under Crawford v. Washington the only remaining question for determining the admissibility of the testimonial statement is whether there was a prior opportunity to confront the unavailable witness. The record reveals that there was no prior opportunity for the defense to confront Gurganus. Therefore, it appears that the trial court violated the defendant's Sixth Amendment right to confrontation by admitting Gurganus' statement.
An error in the defendant's right to confrontation is subject to a harmless error analysis.[19] If a confrontation error occurred, a reviewing court must determine whether the error is harmless beyond a reasonable doubt.[20] In determining whether the guilty verdict rendered was unattributable to the error the following factors should be considered: 1) whether the witness' testimony was important; 2) whether the testimony was cumulative in nature; 3) whether corroborating or contradictory evidence regarding the major points of the testimony existed; 4) the extent of cross-examination permitted; and 5) the overall strength of the State's case.[21]
First, we find that Gurganus' testimony was not essential. The State presented the testimony of witnesses Joshua Riley, Floyd Bell, and John Alexander, who identified David Williams as one of the shooters. Floyd Bell testified that he has known Williams since kindergarten. Bell stated that Williams got out of the van armed with what looked like a .9 millimeter and said, "Y'all going to lay it down," which meant he was going to rob them. Later, Williams looked directly at him, and started shooting the gun. Bell was shot by Williams.
Joshua Riley, Floyd Bell's cousin, has also known Williams all of his life, having grown up with Williams. He saw Williams jump out of the van, wave a gun, and say, "Y'all lay it down," street slang meaning a robbery. Williams then shot into the car hitting Bell.
John Alexander, who worked in the barber shop with the victim, testified that a "slim dude" got out of the van and said "M_____-f______, lay it down," which meant they were going to be robbed. The slim dude started shooting, and later ran toward the shop where the victim was inside. Alexander testified that he knew Williams and identified him on the day of the shooting. He saw Williams shoot an AK toward the barber shop. When Alexander returned to the barber shop after the shooting, the thirty dollars that Rashaan White made that day and his wedding band ring were missing.
Second, the record shows that Gurganus' testimony was cumulative in nature. Witnesses Joshua Riley and Floyd Bell heard Williams tell the crowd outside the barber shop that they were being robbed after getting out of the van armed with a handgun. All of the witnesses saw Williams shoot a weapon. In his statement, Gurganus said that he only saw Williams re-enter the van with a gun.
Third, Gurganus' testimony was corroborated by the testimony of witnesses Joshua Riley, Floyd Bell, and John Alexander who saw the defendant exit the van.
*1103 Fourth, as stated previously, the defense did not have a prior opportunity to cross-examine Gurganus.
Fifth, the State presented a strong case based upon circumstantial evidence. The State sought to prove that one of the gunmen, co-defendant Williams or Turner, was responsible for the death of Rashaan White. Therefore, the court gave the following jury instruction on principals: "[a]ll persons concerned in the commission of a crime are principals and are guilty of the crime charged if, whether present or absent, they directly commit the act constituting the crime, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime."[22] The court also instructed the jury that circumstantial evidence "is evidence which, if believed,... proves a fact, and from the fact you may logically and reasonably conclude that another fact exists," but that they "[could not] find the defendant guilty solely on circumstantial evidence unless the facts proved by the evidence exclude every reasonable hypothesis of innocence."[23]
The State presented its case under both theories of second degree murder and felony murder. Second degree murder is defined as the killing of a human being when the offender has the specific intent to kill or to inflict great bodily harm, or is engaged in the perpetration or attempted perpetration of one of several enumerated felonies, including armed robbery, even though he has no intent to kill or to inflict great bodily harm. LSA-R.S. 14:30.1(A). For specific intent murder, the state must prove that defendant had the specific intent to kill or to inflict great bodily harm.[24] Specific intent is the "state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act."[25] Specific intent may be inferred from the circumstances and actions of the defendant, and the intent to kill or to inflict great bodily harm may be inferred from the extent and severity of the victim's injuries.[26]
Under felony murder, the state must prove the commission of the underlying felony or an attempt.[27] In this case, the State argued the victim was killed during the commission of an armed robbery. Armed robbery is "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another by use of force or intimidation, while armed with a dangerous weapon."[28]
The trial court instructed the jury that in order to convict Williams of second degree murder, they had to find that he killed Rashaan White and acted with the specific intent to kill or inflict great bodily harm, or that he killed Rashaan White while engaged in the perpetration of armed robbery, whether or not he had the intent to kill or inflict great bodily harm.
*1104 In the present case, all of the witnesses  Joshua Riley, Floyd Bell, and John Alexander, knew the defendant, David Williams. Witnesses Joshua Riley and Floyd Bell both saw Williams get out of the van armed, and tell the crowd outside the barber shop that they were being robbed. All three witnesses identified Williams as one of the shooters. John Alexander testified that he saw the slim dude run toward the shop where the victim was inside. He also saw Williams shoot an AK rifle toward the barber shop. When Alexander returned to the barber shop after the shooting, the thirty dollars that Rashaan White made that day and his wedding band ring were missing.
From the totality of the evidence presented by the State, excluding Gurganus' statement, the jury could have found that that defendant was a principal to the second degree murder of Rashaan White, under the specific intent or felony murder provisions of the statute. Accordingly, we find that the confrontation error in the admission of Gurganus' statement was harmless.
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920, State v. Oliveaux,[29] and State v. Weiland.[30] The following matter is noted:
A review of the sentencing transcript reveals that at the hearing on September 4, 2003, the trial court did not inform Williams of the two-year post- conviction relief prescriptive period, which begins to run after his judgment of conviction and sentence has become final.[31] However, the commitment/minute entry reflects that the trial court informed Williams that he had two years after the judgment of conviction and sentence has become final to seek post-conviction relief. When there is a discrepancy between the minutes and the transcript, the transcript must prevail.[32] Therefore, we remand the case to the trial court and order it to inform the defendant of the provisions of LSA-C.Cr.P. art. 930.8 by sending appropriate written notice to the defendant after the rendition of this Court's opinion and to file written proof that defendant received the notice in the record.[33]
For the foregoing reasons, defendant's conviction is affirmed.
AFFIRMED.
NOTES
[1] State v. Tilley, 99-0569 (La.7/6/00), 767 So.2d 6, cert. denied, Tilley v. Louisiana, 532 U.S. 959, 121 S.Ct. 1488, 149 L.Ed.2d 375 (2001).
[2] Id. See also, LSA-C.Cr.P. art. 786.
[3] State v. Carmouche, 01-405 (La.5/14/02), 872 So.2d 1020.
[4] State v. Royal, 01-438, p. 3 (La.App. 5 Cir. 1/15/02), 807 So.2d 962, 963, writ denied, 02-0532 (La.1/10/03), 834 So.2d 436.
[5] State v. Ball, 00-2277 (La.1/25/02), 824 So.2d 1089, cert. denied, Ball v. Louisiana, 537 U.S. 864, 123 S.Ct. 260, 154 L.Ed.2d 107.
[6] State v. Tilley, 767 So.2d at 19.
[7] State v. Royal, 807 So.2d at 964.
[8] Gurganus had previously been convicted of the murder of the victim in this case, Rashaan White. His case was on appeal when his testimony was sought in this case. This Court, in State v. Gurganus, 03-992 (La.App. 5 Cir. 12/30/03), 864 So.2d 771, writ denied, 04-254 (La.6/4/04), 876 So.2d 75, subsequently affirmed the trial court's conviction.
[9] LSA-C.Cr.P. art. 439.1; See, State v. Smith, 96-261 (La.App. 3 Cir. 12/30/96), 687 So.2d 529, writ denied, 97-0314 (La.6/30/97), 696 So.2d 1004.
[10] LSA-C.Cr.P. art. 841; State v. Gaal, 01-376, p. 11 (La.App. 5 Cir. 10/17/01), 800 So.2d 938, 949, writ denied, 02-2335 (La.10/3/03), 855 So.2d 294.
[11] Id.
[12] State v. Berkeley, 00-1900, p. 6 (La.App. 5 Cir. 5/30/01), 788 So.2d 647, 653, writ denied, 01-1659 (La.4/26/02), 814 So.2d 549.
[13] La. Const. art. I, § 16. See also, State v. Robinson, 01-0273 (La.5/17/02), 817 So.2d 1131.
[14] Id.
[15] Id.
[16] LSA-C.E. art. 804(B)(3).
[17] See, Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980).
[18] 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Other courts including a Louisiana appellate court have found that the decision in Crawford v. Washington is applicable to cases which were tried before it was decided. State v. Cox, 04-42 (La.App. 3 Cir. 6/16/04), 876 So.2d 932.
[19] State v. Robinson, 817 So.2d at 1137. We note, however, that in Crawford v. Washington, the Supreme Court expresses no opinion regarding the application of a harmless error analysis to a confrontation clause violation. Crawford v. Washington, at n. 1. See also, State v. Cox, 876 So.2d at 939.
[20] State v. Robinson, supra.
[21] State v. Robinson, supra.
[22] See also, LSA-R.S. 14:24.
[23] See also, LSA-R.S. 15:438.
[24] State v. Kirkland, 01-425, p. 5 (La.App. 5 Cir. 9/25/01), 798 So.2d 263, 268; writ denied by, 01-2967 (La.10/14/02), 827 So.2d 415; State v. Dunn, 94-776 (La.App. 5 Cir. 2/15/95), 651 So.2d 1378.
[25] LSA-R.S. 14:10(1).
[26] State v. Keating, 00-51, p. 4 (La.App. 5 Cir. 10/18/00), 772 So.2d 740, 743; writ denied, 00-3150 (La.10/12/01), 799 So.2d 494.
[27] State v. Kirkland, 798 So.2d at 268.
[28] LSA-R.S. 14:64. State v. Wickem, 99-1261, p. 4 (La.App. 5 Cir. 4/12/00), 759 So.2d 961, 965, writ denied, 00-1371 (La.2/16/01), 785 So.2d 839.
[29] 312 So.2d 337 (La.1975);
[30] 556 So.2d 175 (La.App. 5 Cir.1990).
[31] LSA-C.Cr.P. art. 930.8.
[32] State v. Lynch, 441 So.2d 732 (La.1983).
[33] State v. Hutchinson, 02-60, p. 10 (La.App. 5 Cir. 5/15/02), 817 So.2d 500, 509.