905 So.2d 451 (2005)
STATE of Louisiana
v.
Justin Q. TAYLOR.
No. 04-KA-1389.
Court of Appeal of Louisiana, Fifth Circuit.
May 31, 2005.
*453 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Thomas J. Butler, Vincent Paciera, Jr., Donald A. Rowan, Jr., Assistant District Attorneys, Twenty-Fourth Judicial District, Parish of Jefferson, Gretna, LA, for Plaintiff/Appellee.
Laura M. Pavy, Louisiana Appellate Project, New Orleans, LA, for Defendant/Appellant.
Panel composed of Judges JAMES L. CANNELLA, THOMAS F. DALEY, and WALTER J. ROTHSCHILD.
THOMAS F. DALEY, Judge.
The defendant, Justin Taylor, was charged in a Bill of Information on August 8, 2002 with nine counts of armed robbery (counts one through nine), in violation of La. R.S. 14:64, and one count of conspiracy to commit armed robbery (count ten), in violation of La. R.S. 14:26 and 14:64.[1] He pled not guilty and filed several pre-trial motions. On September 16, 2003, the defendant and co-defendant, Eddie Jackson, proceeded to trial on counts eight, nine, and ten.[2] After a three-day jury trial, the defendant was found guilty as charged on all three counts by a unanimous twelve-person jury. He was sentenced to 60 years on each armed robbery conviction (counts eight and nine) and 40 years on the conspiracy to commit armed robbery (count ten), which were ordered to run concurrently with each other.

FACTS
On June 7, 2002, Thomas Washington was employed as a security guard for the AmSouth Bank on Veterans Boulevard, in Kenner, Louisiana. At approximately 4:30 p.m., Mr. Washington saw three black males come around the corner and go behind a wooden fence alongside the bank. He saw them don bandanas, remove them, and then leave. He later identified the defendant as being one of the three men. Co-defendant, Kenneth Rivers, testified, at trial, that he, Eddie Jackson, and the defendant went to the bank on June 7, 2002 to rob it.
Three days later, on June 10, 2002, the AmSouth bank was robbed by two men. Laura Waguespack, the Assistant Manager of the Bank, testified she was sitting at her desk inside the bank when she saw two men wearing bandanas and carrying guns run towards the bank and jump the steps near the door. She yelled out that the bank was about to be robbed. The armed men then entered the bank. One walked directly to Ms. Waguespack, pointed his gun at her and told her not to move, and *454 the other approached the teller line, pointed a gun at teller Adriene Bazile's face, and demanded money. Ms. Bazile complied by giving him money from her drawer and money a customer was depositing at the next teller window.
Meanwhile, the Branch Manager stepped into the lobby during the armed robbery and retreated to his office, where he pressed a silent alarm to call the police. Mr. Washington, the security guard, was outside the bank when he saw the perpetrators enter the bank. He called 911 on his cell phone and watched the robbery through the window.
The perpetrators took approximately $6,725.00 and then fled the bank in a white van. In an attempt to stop the perpetrators, the security guard fired his weapon at the van, but missed. The van was subsequently stopped by the Kenner police and its occupants detained. Several bank employees were brought to the location where the suspects were detained. Ms. Waguespack and Ms. Bazile explained they could only see the perpetrators' eyes during the robbery, but were able to identify one suspect at the scene as being one of the robbers based on his hairdo, which was described as sticking straight up and being similar to Don King's hairdo. Mr. Washington recognized both of the suspects, one of whom was the defendant, as the men who robbed the bank that day and who were at the bank three days earlier. Mr. Washington testified that the defendant was the one with a "big afro."
The defendant was arrested and subsequently advised of his rights. He waived his rights and gave a statement to the police wherein he admitted his involvement in the armed robbery of the bank.
In his first Assignment of Error the defendant/appellant argues that the trial court erred in permitting the State to introduce co-defendant, Eddie Jackson's, statement in his trial because it was a substantial violation of his constitutionally guaranteed right of confrontation.
The defendant claims the trial court erred in allowing co-defendant, Eddie Jackson's, two statements to the police into evidence. He contends that because Jackson invoked his Fifth Amendment privilege and did not testify, he was denied his constitutional right to confrontation. The State appears to concede that Jackson's statements were inadmissible under Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), which was decided after the defendant's trial, but maintains the error was harmless in light of the overwhelming evidence against the defendant.
Prior to seeking to admit Jackson's statements, the State sought to admit the defendant's confession. Counsel for co-defendant, Eddie Jackson, objected on the basis the defendant was not planning to testify and, therefore, he was being denied his right to cross-examine the defendant. Jackson's counsel moved for a mistrial. The State responded that Jackson's counsel waited too long to make the objection and that the defendant's inculpatory confession was admissible because both the defendant and co-defendant admitted to the same thing in their statements. The trial court agreed with the State and denied the mistrial.
Thereafter, the State sought to play Jackson's statements for the jury during the testimony of Detective Chad Jacquet. Defense counsel re-urged all the objections that had been previously made by Jackson's counsel when the State sought to play the defendant's statement. Defense counsel stated he would move for a mistrial if Jackson did not take the stand to afford the defendant an opportunity to cross-examine him. His objection was noted *455 and Jackson's statements were played for the jury.
The Sixth Amendment to the United States Constitution guarantees an accused in a criminal prosecution the right to be confronted with the witnesses against him. The confrontation clause of the Louisiana Constitution expressly guarantees the accused the right "to confront and cross-examine the witnesses against him." La. Const. art. I, § 16; State v. Robinson, 01-0273 (La.5/17/02), 817 So.2d 1131, 1135. Confrontation means more than the ability to confront the witnesses physically. Its main and essential purpose is to secure for the opponent the opportunity of cross-examination. Id. at 1135. Cross-examination is the primary means by which to test the believability and truthfulness of the testimony and has traditionally been used to impeach or discredit the witness. Id.; State v. Williams, 04-608, p. 6 (La.App. 5 Cir. 11/30/04), 889 So.2d 1093, 1100.[3]
In Bruton v. U.S., 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the United States Supreme Court held that a defendant is deprived of his rights under the Confrontation Clause when his co-defendants incriminating confession is introduced at their joint trial, even if the jury is instructed to consider that confession only against the co-defendant. In Bruton, the defendant was implicated in a robbery by the confession of his co-defendant, which was introduced into evidence. The co-defendant did not testify at the joint trial and the defendant had not confessed.
In Cruz v. New York, 481 U.S. 186, 107 S.Ct. 1714, 95 L.Ed.2d 162 (1987), the Supreme Court addressed the issue of whether Bruton should apply to bar the introduction of the jointly-tried co-defendants confession where the defendants own confession, which "interlocked" with the co-defendants confession, had also been admitted as evidence against the defendant, at trial. The Court had previously considered a similar issue in Parker v. Randolph, 442 U.S. 62, 99 S.Ct. 2132, 60 L.Ed.2d 713 (1979), and the plurality of the Court found Bruton inapplicable in cases involving interlocking confessions, because the introduction of the co-defendants confession was not "devastating" to a defendant whose own interlocking confession was introduced as evidence against him. However, the majority of the Court in Cruz rejected the plurality rationale espoused in Parker. The Cruz court found that the introduction of a jointly tried co-defendants confession that interlocked with the defendants confession was even more harmful to the defendant, because it corroborated the defendants own guilty confession. The Cruz court determined that a co-defendants statement remains inadmissible at a joint trial even when the defendant has given his own "interlocking" statement, and that statement is admitted, at trial, against him. See also, State v. Johnson, 96-0959 (La.6/28/96), 675 So.2d 1098; State v. Jackson, 03-883, p. 11 (La.App. 5 Cir. 4/27/04), 880 So.2d 841, 852, writ denied, 04-1399 (La.11/8/04), 885 So.2d 1118.
Importantly, the Cruz court explained that the defendant's own confession may be considered, at trial, in assessing whether his co-defendant's statements are supported by sufficient "indicia of reliability," so as to be directly admissible against the defendant, despite the lack of opportunity for cross-examination, under the requirements of Lee v. Illinois, 476 U.S. 530, 106 *456 S.Ct. 2056, 90 L.Ed.2d 514 (1986). Cruz v. New York, 481 U.S. at 194, 107 S.Ct. at 1719; State v. Harris, 98-2113 (La.App. 1 Cir. 6/25/99), 739 So.2d 312, 315. Thus, under Cruz, a co-defendants statement is admissible at a joint trial when his statement is admissible directly against the defendant as substantive proof of the defendants guilt, if the co-defendants statement meets the "indicia of reliability" test explained in Lee.
In Lee v. Illinois, supra, the Supreme Court found that the defendants right to confrontation was violated when a non-testifying co-defendants confession was admitted as substantive evidence against the defendant, despite the fact that the co-defendants confession was interlocked with the defendants confession. The Lee court held that custodial confessions of non-testifying, unavailable co-defendants are inherently suspect and presumptively unreliable against a defendant. The Court went on to state that the presumption may be rebutted, but found the co-defendants confession, in that case, did not bear sufficient independent "indicia of reliability" to rebut the presumption of unreliability. Id., 476 U.S. at 543, 106 S.Ct. at 2063. The Lee court implied that the presumption of unreliability could be rebutted by a significant showing of trustworthiness and other "indicia of reliability" as to the co-defendants confession.
Despite the Supreme Courts pronouncement in Lee and Cruz, the Louisiana Supreme Court has observed that the Supreme Court "has not yet delineated those circumstances under which a codefendants statement may be directly admissible against the defendant." State v. Johnson, 96-0959 (La.6/28/96), 675 So.2d 1098. Additionally, the U.S. Fifth Circuit Court of Appeals has noted that
The Supreme Court has never allowed the admission against a defendant of a codefendants hearsay inculpatory statements to law enforcement authorities, although it has suggested that theoretically such hearsay could be admitted in appropriate circumstances.
U.S. v. Flores, 985 F.2d 770, 782 (5th Cir.1993).
Recently, in Crawford v. Washington, supra, the United States Supreme Court again discussed the Confrontation Clause and held that in order for a statement obtained during police interrogation to be admissible against an accused in a criminal trial, it must be shown that the declarant is unavailable and there was a prior opportunity to confront the witness. See, State v. Williams, 889 So.2d at 1101. Although Crawford did not involve jointly tried defendants and the admissibility of a co-defendants confession as substantive evidence against a defendant, it appears to abrogate any "indicia of reliability" test in determining the admissibility of a co-defendant's confession as evidence against a defendant.
In Crawford, the State sought to admit the recorded statement of the defendants wife, which was made during police interrogation as substantive evidence against the defendant. The wife did not testify at trial, because of the spousal privilege. The trial court allowed the wife's statement into evidence by relying on Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597, which held that the right to confrontation did not bar the admission of an unavailable witness statement against a criminal defendant, if the statement bore an adequate "indicia of reliability," either through a firmly rooted hearsay exception or other particularized guarantees of trustworthiness. The Supreme Court reversed finding the admission of the wife's statement violated the confrontation clause, because the only indicia of reliability to satisfy the constitutional right is confrontation. *457 Crawford, 124 S.Ct. at 1358. The Supreme Court noted its decision was consistent with its prior decisions in Bruton, Lee, and Cruz. Id., 124 S.Ct. at 1368-1369.
Crawford clarified any doubt that a statement given to the police during a custodial interrogation is only admissible where the declarant is unavailable and there was a prior opportunity to confront the witness. Whether a testimonial statement bears any "indicia of reliability" is no longer the test in determining whether a defendants right to confrontation has been violated.
Crawford was decided after the defendant was tried and convicted. However, this Court has held that Crawford applies to cases that were tried before the opinion was rendered. State v. Williams, supra.
Applying the Crawford test, Jackson's statements were admissible only if he was unavailable to testify and the defendant had a prior opportunity to confront Jackson. The fact that Jackson invoked his Fifth Amendment right against self-incrimination and refused to testify at trial renders him unavailable. La. C.E. art. 804; State v. Williams, 889 So.2d at 1101. Additionally, the record is devoid of any evidence that the defendant had a prior opportunity to confront Jackson. Therefore, the defendant's Sixth Amendment right to confrontation was violated by the admission of Jackson's statements.
A violation of a defendant's right to confrontation is subject to a harmless error analysis. State v. Williams, 889 So.2d at 1102. An error is harmless when the guilty verdict was surely unattributable to the error. Whether an error is harmless in a particular case depends upon many factors, including the following: 1) the importance of the witness' testimony; 2) whether the testimony was cumulative in nature; 3) whether corroborating or contradictory evidence regarding the major points of the testimony existed; 4) the extent of cross-examination permitted; and 5) the overall strength of the State's case. Id., citing State v. Robinson, 817 So.2d at 1137.
Jackson's statements were not essential to the State in its case against the defendant. The State presented the testimony of Thomas Washington, the security guard who identified the defendant as one of the perpetrators who committed the armed robbery and one of the three people he had seen at the bank three days earlier. Additionally, Kenneth Rivers, another co-defendant, testified that he and the defendant went to the bank three days before the actual robbery with the intent of robbing it. The State further offered the testimony of Glenn Clark, a construction worker on a nearby building, who testified he saw the defendant speed by in a white minivan on the day of the robbery. The Assistant Bank Manager testified the perpetrators left the bank after the robbery in a white minivan.
The defendant was arrested after being pulled from the white minivan and he gave a confession admitting to the armed robbery, which was played for the jury. The record shows the defendant's confession was corroborated by evidence other than Jackson's second statement. Jackson's second inculpatory statement was merely cumulative of the evidence presented. Additionally, Jackson's statement simply corroborated the defendant's confession. See Cruz v. New York, 481 U.S. at 194, 107 S.Ct. at 1719, where the Supreme Court suggested that the "interlocking" nature of the co-defendant's statement may be considered on appeal in assessing whether a violation of the confrontation clause was harmless.
Based on the foregoing, the violation of the defendant's right to confrontation by *458 the erroneous admission of Jackson's statements was harmless beyond a reasonable doubt.
In his second Assignment of Error, the defendant/appellant argues that the trial court imposed an excessive sentence.
The defendant claims his 60 year sentence for armed robbery is excessive considering he was a 19-year-old first felony offender at the time of the offense. The defendant was sentenced to 60 years on each of the two armed robbery convictions, which were ordered to run concurrently, and 40 years for his conspiracy to commit armed robbery conviction. The defendant does not challenge the 40 year sentence.
The defendant made an oral Motion for Reconsideration of Sentence, after sentence was imposed, stating he "would like to orally go ahead and request the Court reconsider the sentencing." The defendant then stated he would supplement his oral request with a written motion. The trial court stated that it would consider the motion after the written motion was filed. The record filed in this Court does not show the defendant ever filed a written motion or that the trial court ever ruled on the defendant's oral motion.
This Court has held that the failure of a trial court to rule on a timely Motion for Reconsideration of Sentence requires a remand. State v. Evans, 02-1108, p. 4 (La.App. 5 Cir. 3/11/03), 844 So.2d 111, 114. La.C.Cr.P. art. 881.4 provides that if it is "necessary to an appropriate disposition of a motion to reconsider sentence, the appellate court may remand the case to the trial court with instructions to supplement the record or to hold an evidentiary hearing."
In State v. Winfrey, 97-427, p. 17 (La.App. 5 Cir. 10/28/97), 703 So.2d 63, 81, writ denied, 98-0264 (La.6/19/98), 719 So.2d 481, this Court affirmed the defendants conviction and remanded the case for a ruling on a Motion for Reconsideration of Sentence. This Court further explained that if the Motion to Reconsider Sentence was granted and the defendant was resentenced he could appeal the new sentence. In addition, if the motion was denied or was already ruled on, the defendant had to re-lodge his appeal within 60 days of the date of the ruling on the Motion for Reconsideration of Sentence or the date of the opinion, whichever was later.
In the present case, the defendant made an oral Motion for Reconsideration of Sentence without stating specific grounds for the motion as required by La.C.Cr.P. art. 881.1. He indicated he would file a written supplement to his oral motion, but failed to do so. The defendant abandoned his oral Motion for Reconsideration of his sentence by failing to file a written supplement because he did not orally state the specific grounds upon which it was based and, therefore, there was nothing for the trial court to consider.
Since, the defendant has abandoned his Motion for Reconsideration of Sentence, we are limited to reviewing his sentence for constitutional excessiveness. State v. Harris, 02-873, p. 4 (La.App. 5 Cir. 1/28/03), 839 So.2d 291, 294, writ denied, 03-0846 (La.10/31/03), 857 So.2d 474.
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive, even if it is within the statutory limits, if it is grossly disproportionate to the severity of the offense or imposes needless and purposeless pain and suffering. State v. Wickem, 99-1261, p. 7 (La.App. 5 Cir. 4/12/00), 759 So.2d 961, 968, writ denied, 00-1371 (La.2/16/01), 785 So.2d 839. Trial judges are granted great discretion in imposing sentences and sentences will not be set aside as excessive absent clear abuse of *459 that broad discretion. State v. Allen, 03-1205, p. 3 (La.App. 5 Cir. 2/23/04), 868 So.2d 877, 879.
In reviewing a sentence for excessiveness, the reviewing court must consider the crime and the punishment in light of the harm to society and gauge whether the penalty is so disproportionate as to shock its sense of justice, recognizing at the same time the wide discretion afforded the trial judge in determining and imposing sentence. State v. Lobato, 603 So.2d 739, 751 (La.1992); State v. Allen, supra. The issue on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate. State v. Allen, supra. In reviewing a trial courts sentencing discretion, three factors are considered: 1) the nature of the crime, 2) the nature and background of the offender, and 3) the sentence imposed for similar crimes by the same court and other courts. Id.
A sentence for armed robbery ranges from 10 years to 99 years, without the benefit of parole, probation, or suspension of sentence. La. R.S. 14:64. The defendant was sentenced to 60 years for each of his two armed robbery convictions, which were imposed concurrently. The defendant argues his youthful age of 19 and the fact he was a first felony offender renders his 60 year sentence excessive.
Sentences in excess of the minimum for armed robbery have been upheld despite the youth of the defendant and/or the lack of a prior criminal history. However, most of these cases involve more egregious circumstances than the present case.
In State v. Williams, 04-697, pp. 9-10 (La.App. 5 Cir. 11/30/04), 889 So.2d 1135, 1144-1145,[4] a 22-year-old defendant received a 70 year sentence for armed robbery. The defendant robbed a bank while armed with a gun. In finding, the defendant's sentence was not constitutionally excessive, this Court noted the defendant had an extensive record of violent criminal activity, which was evidenced by the presentence investigative report.
In State v. Sanborn, 02-257, pp. 10-12 (La.App. 5 Cir. 10/16/02), 831 So.2d 320, 330-332, writ denied, 02-3130 (La.9/26/03), 854 So.2d 346, this Court upheld the defendant's 75 year sentence for armed robbery despite his youthful age of 25 and the fact he was a first time offender. However, the defendant's crime was exceptionally brutal. The defendant shot, pistol whipped, and broke one of the victim's ankles during the commission of the crime.
In State v. Palmer, 00-0216 (La.App. 1 Cir.12/22/00), 775 So.2d 1231, writs denied, 01-0211 (La.1/11/02), 807 So.2d 224 and 01-1043 (La.1/11/02), 807 So.2d 229, the court upheld a 65 year sentence for armed robbery, although the defendant was a first felony offender. In that case, the defendant and a companion robbed a small grocery store while armed with guns. The defendant pointed his gun at a female customers face and shot a male customer. He also threatened the store clerk with the gun.
In State v. Lofton, 96-1429 (La.App. 1 Cir. 3/27/97), 691 So.2d 1365, writ denied, 97-1124 (La.10/17/97), 701 So.2d 1331, the First Circuit upheld a 50 year sentence imposed for a first felony offender convicted of armed robbery. In that case, the defendant put a gun to the victims head as a threat and discharged the gun at least twice while the victim fled, but did not shoot the victim.
In State v. Mitchell, 26,718 (La.App. 2 Cir. 12/7/94), 647 So.2d 423, the Second *460 Circuit upheld a 50 year sentence for a young offender, who robbed a pizza restaurant at gunpoint, shot the manager five times, and then repeatedly stabbed her.
In State v. Smith, 433 So.2d 688 (La.1983), the Louisiana Supreme Court affirmed a 60 year sentence for an armed robbery of a bank. The Supreme Court noted the defendant was the planner and organizing force of the robbery in which victims were threatened and shots were fired. The court also noted the defendant had a substantial criminal past.
In the present case, the State introduced evidence at the sentencing hearing suggesting the defendant had been involved in several armed robberies for which he was not arrested. However, the trial court sentenced the defendant without consideration of this evidence because it found the evidence was not clear and convincing. The trial court noted that the defendant engaged in a three-day crime spree where, luckily, no one was killed.
In cases similar to the present one, where the defendant does not have a criminal history and the armed robbery did not involve the discharge of a weapon or any physical injury to the victims, the sentencing range is between 20-40 years.
In State v. Price, 04-812 (La.App. 5 Cir.3/1/05), ___ So.2d ___, 2005 WL 474339, this Court found a 23-year-old defendants 40 year sentence for armed robbery not to be excessive. In Price, the defendant robbed a Taco Bell while armed with a firearm. No shots were fired, but the defendant made one of the employees lie on the floor while he pointed a gun at them.
In State v. Lewis, 39,263 (La.App. 2 Cir. 1/26/05), 892 So.2d 702, the defendant, a first felony offender, received three concurrent 20 year sentences for the armed robbery of three employees at a bank. The defendant was armed with a BB gun.
In State v. Roddy, 33,112 (La.App. 2 Cir. 4/7/00), 756 So.2d 1272, writ denied, 00-1427 (La.5/11/01), 791 So.2d 1288, a 22 year-old first felony offender defendant received a 20 year sentence for armed robbery of a bank. The defendant was a passenger in the getaway car, but was aware of the plan to rob the bank. The presentence report noted the defendant had spent eight months in a juvenile detention center for a prior adjudication for armed robbery.
In State v. Square, 433 So.2d 104 (La.1983), the Louisiana Supreme Court upheld the defendants 25 year sentence for a bank robbery. The defendant was 22 years old, was gainfully employed, lacked a prior criminal record, and there was an absence of personal injury to the victims of the robbery.
However, in this case, the defendant was charged with nine counts of armed robbery, and one count of conspiracy to commit armed robbery. He was tried on two counts of armed robbery and conspiracy to commit armed robbery, and found guilty. The sentencing range for armed robbery was 5 to 99 years at the time the instant offenses were committed. The trial court considered the defendants age and reviewed the sentencing guidelines before imposing a 60 year sentence for each count of armed robbery. The defendants sentences of 60 years on each count of armed robbery, to be served concurrently, fall in that range.
The issue before us on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate. We apply three factors in reviewing a trial courts sentencing discretion: the nature of the crime, the nature and background of the offender, and the sentence imposed for similar crimes. *461 We find in this case that the defendants sentence is not constitutionally excessive. Although, the defendant was nineteen years old and a first time offender, he went on a three-day violent crime spree. While in cases with facts similar to the present one the sentencing range is between 20-40 years, the defendant's sentence of 60 years is within the statutory sentencing range (10-99 years) and does not shock our conscience. The defendant participated in an armed robbery in which victim, Adriene Bazile, testified that she had a gun pointed at her face, which placed her in fear of her life. Bazile testified that she was terrified during the robbery and fell on the floor crying when the robbers, including the defendant, left the bank. Victim, Laura Waguespack, testified that a gun was pointed at her during the robbery, which made her nervous and she feared for herself. Given these factors, we do not find the sentence imposed to be excessive.
In his third Assignment of Error, the defendant requests that the record be reviewed for all errors patent.
As requested by the defendant, the record was reviewed for errors patent, according to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990).
The trial court failed to properly inform the defendant that the prescriptive period for filing post-conviction relief is two years after his judgment of conviction and sentence has become final. La.C.Cr.P. art. 930.8. At the time of sentencing, the trial court advised the defendant, "you have . . . two years to file for post conviction relief." In a subsequent order, dated April 27, 2004, the trial court advised the defendant he had "two years from the finality of sentence to seek post-conviction relief." This Court has held that the failure to advise a defendant that the prescriptive period runs from the time his conviction and sentence become final renders the advisal incomplete. See, State v. George, 99-887, p. 3 (La.App. 5 Cir. 1/4/00), 751 So.2d 973, 975. Although the commitment indicates a complete advisal was given, the sentencing transcript prevails when there are discrepancies. State v. Lynch, 441 So.2d 732, 734 (La.1983). Therefore, this case is remanded and the trial court is ordered to properly inform the defendant of the time from which prescription for post-conviction relief runs by sending written notice to the defendant within ten days of the rendition of this Court's opinion and to file written proof that the defendant received the notice, in the record. Id.
For the foregoing reasons, the defendant's conviction and sentence are affirmed and the case is remanded with instructions for the trial court to inform defendant of the correct prescriptive period for seeking post-conviction relief.
AFFIRMED AND REMANDED.
NOTES
[1] The Bill of Information also charged co-defendants, Eddie Jackson and Kenneth Rivers, with several crimes.
[2] On December 17, 2003, the State nolle prossed counts one through seven.
[3] The Louisiana Supreme Court has not ruled on Writ No. 05-KO-81, which was filed with on January 11, 2005.
[4] The Louisiana Supreme Court has not ruled on a writ filed on February 17, 2005.